Case number 20-3175, Roberto Hernandez-Serrano v. William Barr, argument not to exceed 15 minutes per side. Mr. Winograd, you may proceed for the appellant. Thank you and may it please the court. The question in this case is whether immigration judges and the BIA have the general power to administratively close cases. The fourth and even if the regulations were unclear, the Attorney General's decision in matter of Castro-Tum would not be entitled to any level of deference. This court should reach the same conclusion, not only to avoid creating a circuit split, but to help prevent the immigration courts from becoming even more hopelessly backlogged. The question here is not, you know, avoiding a split and creating backlogs. It is what the reg means. Is that correct? That is correct and as the fourth and seventh circuits have recognized, the authority to administratively close cases comes from 8 CFR 1003.10b and 1003.1d12, which authorize IJs in the board to take any action consistent with their authorities that is appropriate and necessary to the disposition of the case. Mr. Winograd, would you agree that administrative closure itself is not a case? I would certainly agree that it itself is not a disposition, but I would not agree that it is never appropriate or necessary to the disposition of a case. Okay, so it's not, so the seventh circuit said it was and frankly that seemed a bit odd to me and I think you agree it's not a disposition. So, I mean, administrative closure is, is it fair to say it's a decision not to decide a case? I would not say that because it does not indefinitely take a decision. It is simply an extended form of continuance. In other words, it's you, I don't know if this is in the record. Do you happen to be aware of, you know, percentages regarding how often cases that are I do not believe that is in the record. I believe the, the attorney general referenced that in matter of Castro-Tumdao, in the decision itself. Okay. I think the AG there said something. I mean, obviously we're familiar with these numbers about there were 280,000 administrative closures, I think between like 1984 and 2012, that Adivisin case. And then there's another 200,000 between 2011 and 2017. I think the AG was saying that most of those were never reopened, the vast majority. Yes, the attorney general did say that, but I would believe that is separate from the question of whether immigration judges and the board have the authority. Sure. I mean, doesn't just, you know, as an initial matter, doesn't it sort of seem strange that a power would, would be deemed necessary to the disposition of cases when apparently in the vast majority of cases, it results in no dispute. It's a decision that leads to no disposition of the case. Well, I wouldn't your honor, because I would note that prior to the board decision in 2012, in matter of Obitizian, administrative closure could only be granted if both parties agree. And so even then there were over 200,000 times where immigration judges or the board administratively closed cases where both parties agreed. So, you know, when both parties agree on the outcome of a case or on administrative closure, then certainly in that case, I think it would be appropriate and necessary. Okay. But it's not an outcome. I mean, it's, it's a decision simply not to apply the laws in that case. Well, I would, I respectfully disagree with your characterization of administrative closure as a decision not to decide the case, because in many cases, administrative closure actually results in cases being more decided more quickly than they otherwise would. And I think a matter of Obitizian itself provides a perfect example of that. That seems to be the only example in the record that I can find. It's always the same example where CIS is making a determination with regard to a visa while an IJ is doing a removability determination, and they have to drive the file back and forth. I mean, I haven't seen anything brief in the record, which gives us more of an example of how Sure. I would be happy to provide another example. And probably perhaps the best example are aliens who are eligible to apply for what are called provisional waivers. That was the issue in the four circuit decision. And we discussed those on pages 29 and 30 of our opening brief aliens who are eligible for provisional waivers pose a very slight burden on the immigration court, because once the waiver is granted by DHS, the only thing that is left for the immigration judge to do is grant voluntary departure so that the alien can return to their native country and obtain their visa. Now, under DHS regulations, aliens cannot apply for a provisional waiver unless the proceedings have been administratively closed. So without the Which reg is that? The DHS reg is 8 CFR 212.7ED. I can provide the Okay, that's okay. It sounds like it's probably in that fourth circuit case. It is in that fourth circuit case. Okay. And so if aliens and removal proceedings cannot apply for provisional waivers, they will inevitably apply for more complicated forms of relief, like asylum and cancellation of removal, for which they could wait years to even receive a hearing. And then if those forms of relief are denied, many will inevitably appeal to the board. Whereas this case shows it's now taking more than a year for aliens who are not in detention to even receive a briefing schedule. So the point is simply that simply because administrative closure may result in a temporary suspension of proceedings does not mean that it prolongs the overall length of granting administrative closure can often shorten the length of proceedings, because it allows aliens to form to pursue forms of relief, like adjustment of status as a matter of obituse, john, or provisional waivers, as I was mentioning earlier, that require very little bench time to resolve. And even to the extent that it just seems like the overwhelming reality, though, is that those cases are about this much of the 200,000 total that the ag was pointing towards. Well, I mean, I don't think we can speculate on the exact percentage of cases that each category takes up. There are many other cases of aliens involving temporary protected status, for example, whose cases have been administratively closed. I would concede that these numbers are not in the record, but only the Attorney General has access. Yeah, okay, that's fair. Sure. But I would say that to the extent two points to the extent that administrative closure can prolong the length of an individual proceeding, that does not relate to whether I J's have the underlying power to grant administrative closure. It relates to whether administrative closure would be a necessary provision you rely upon the sentence that you rely upon, you know, about necessary and appropriate to the disposition of such cases. So we've kind of talked about the disposition part is that really is this in service of that? But I mean, the point is emphasized in the first couple words of this provision. It says in deciding the end of individual case cases before them, the I J's can use can take actions that are necessary and appropriate to disposition. And I just wonder if that is well supports the Attorney General's determination that this is not a provision that provides some general authority to I think a temporary suspension is a really charitable way of describing what happens here to put to put a case in a status where the default is it will not be decided. And as a matter of fact, the department bears the burden of persuading the exercise in the service of quote deciding cases. Well, I would say if I don't think we can look at those regulations in a vacuum. I think we also have to look at the regulatory scheme as a whole. And so to the extent there's any doubt about whether those regulations can further to administratively closed cases, I would say that doubt would be eliminated by the fact that other regulations not only reference administrative closure, but require cases to be close in certain circumstances. I've read those. I've read those. I mean, it just seems to say, you know, I mean, you could read those as standalone regulations. I mean, I guess I'm just I'm trying to I really want to test some of the things I'm thinking about against your greater knowledge, frankly. There there might be two responses to your point. The first is that this was, in fact, a widespread practice for many years. Administrative closure was happening when these regs were promulgated in 2003, 1998, whatever. So there was something to point to. That doesn't mean it was a lawful practice, but it was a practice. And secondly, I mean, why isn't the government right that these provisions are are granting the authority, mandating it in some cases, permitting it in the case of a T visa? Why not just leave it at that? There's no nothing else that grants general authority the way there is for continuances. Well, I think, as Judge Barrett persuasively noted in her decision for the Seventh Circuit, the fact that other regulations require cases to be administratively closed strongly implies that IJs have a pre-existing general power to do so. So those regulations would be rendered superfluous, as the attorney general said in a matter of cast or tongue. Well, OK, but, you know, you get to a very strange result with the T visa provision for people who are victims of, you know, especially bad trafficking. And it says that if somebody is a victim of especially bad, like, human trafficking, that she can apply for this T visa. And if the IJ thinks that she is likely to be found eligible, then the IJ may administratively close. Now, if they already have a pre-existing power to administratively close, what that provision would seem to be doing is restricting that power, imposing a pretty stern condition upon administrative closure in cases involving these victims of a terrible crime, whereas somebody doesn't show up for a removal hearing four times and the judge has no restriction. That would seem to be a pretty strange regime. If I may answer the question. Sure. I think that that is the only regulation that even plausibly supports the attorney general's position. But I think that that proves too much, because there are many other regulations that, if you apply the same logic, would also be rendered superfluous with regard to continuances. It's not superfluous. It's not superfluous. It actually is doing work. It's making it harder for this woman to get a T visa or to get closure in her case. Okay. There are many, in regards to continuances, just for example, there is a general regulation that authorizes IJs to grant continuances, but there are many other examples where they say immigration judges may grant continuances for X, Y, and Z reasons. So there is, especially in the immigration context, there are many regulations that are duplicative, superfluous, they were all not promulgated at one time. So I think that I just think a very thin reed for the government to rest their case on. Well, I think some of the words in the very sentence you rely upon aren't such a thin reed, and in fairness to But anyway, you've answered my questions. Thank you. I know you're out of time, but just one additional question here. I guess if we read the Fourth and the Seventh Circuit's opinions regarding the Attorney General's opinion in Madoff-Castro-Tum, reading those decisions together, one would reach the conclusion that the Attorney General's opinion was wrongfully promulgated from a legal standpoint. In a nutshell, could you tell us why Madoff-Castro-Tum was wrongfully promulgated as a legal matter, if that happens to be your opinion? Well, the Attorney General certainly had the authority to issue the decision. He did have that authority, but we believe that the decision was wrongly decided. We think under the regulations that I previously mentioned, we think those are certainly broad enough to encompass the authority to administratively close cases, especially when considered with other regulations that specifically reference and require administrative closure in some circumstances. And then I would say to the extent there is really any remaining doubt, that should be dispelled by the fact that prior Attorneys General have entered judicially approved settlement agreements that require administrative closure in certain circumstances. So the Attorney General has never attempted to either in Castro-Tum or in this case, how his predecessors could have entered settlements requiring administrative closure, if IJs and the BIA lack. That's an interesting question. I mean, when you step back and look at the much larger framework we're dealing with here, part of it is the executive has to follow the rules that the executive itself promulgates. And with respect to the manner in which it's going to exercise its authority, to the extent it promulgates rules, it's got to follow. Now, if the judicial branch in exercising the judicial power in a case of controversy orders the executive, albeit through a settlement, but it's still a court order, orders the executive to take an action like administrative closure, that's different. It's the court is, the executive can arguably do that because it's being ordered by a court and that excuses its violation of its own rule, if we think of it in a separation of power sense. So, I mean, I guess I'm saying I don't really see that as such a categorical problem. Well, I would say the regulate, the any, again, the any acts and regulations that relied on, that I relied on earlier, specifically say that IJs in the board can only exercise the powers that are delegated to them by the INA and by the attorney general through regulation. So, the attorney general cannot delegate powers to IJs in the board through a judicial settlement. I just think it would be extremely odd for a prior attorney general to agree to have his delegates exercise the power that through a judicial settlement that they don't, in fact, that they did not, in fact, have the authority to exercise. That just seems extremely odd. All right, we'll hear from the government's counsel. Edward Wiggers for the respondent, the attorney general. Congress made the attorney general the authority on interpreting the immigration regulations and the attorney general exercised that authority in matter of Castro-Tum to correct his delegates' misunderstandings of their own authority. The IJ's guidance on that authority is consistent with the regulations and the court should deny the petition for review. Now, regarding the regulations and the rules governing the procedures in the regulations, if you look at 1003.12 of ACFR, the purpose of the rules is to promote the expeditious, fair, and proper resolution of the matters pending before the immigration judge. Expeditious would not involve a situation where a proceeding can be parked indefinitely off the court's radar where it's not tracking it anymore and where two-thirds of those decisions never make it back in front of the immigration judge. The regulations authorize a postponement of a hearing once it starts, but they do not authorize the immigration judge to terminate the proceedings without actually going through the termination process. And for termination, ordinarily you have to find that the alien is not, in fact, removable. Mr. Wiggers, what is the termination provision in these regs, just so I can check that out? I don't know if the regs specifically elucidate a termination provision. That's what the ordinarily the practice the IJ engages in when they find the alien is not removable. If DHS fails to meet its burden on the grounds for removability, then the IJ terminates the case. Okay, yeah, that makes sense. Okay, thanks. Go ahead. Instead of a finding removability, you have a finding that they're not removable. The Supreme Court cautioned in Vermont Yankee that the courts of appeals are not to impose the procedures that they feel would be best for the agency to follow. And there are no constitutional requirements for a premature cessation of immigration proceedings before they reach a final decision. There's no compelling reason to derail an immigration proceeding before it reaches its conclusion, especially in the face of the regulations calling for there being an expeditious resolution of the matters in front of the immigration judge. Mr. Riggers, what's your response to Mr. Winograd's argument about 8 CFR 212.7ED, the provisional waiver provision? Yes, your honor. As was discussed during Mr. Winograd's argument, many of these regulations didn't come about at the same time and weren't, haven't all necessarily been well meshed together. As my reading of Castro-Tung in light of DHS regulations requiring administrative closure suggests that there may be an avenue for administrative closure in those circumstances. Castro-Tung did not specifically consider that, but it did say that where the regulations authorize administrative closure, it's available as an opportunity. And while there is not a regulation in the 1000 series of immigration regs, which is the portion that applies to the executive office for immigration review, addressing the provisional as far as I know that authorizes administrative closure. If the DHS portions of the reg require administrative closure, I'm not sure exactly how the agency would handle that, but that would suggest to me that there should be a way for administrative closure to happen since the DHS regs are requiring it for part of the immigration process. All right. And of course, that's not an issue that we have in front of us right now, but we have the regulations calling for these matters to be allowed to proceed to a resolution. And the attorney general gave effect to that through his decision on the plain language of the regulations to the extent the court might find it ambiguous with the broad terms of any action. First and foremost, the actions must be necessary and appropriate applies to the exercise of the immigration judge's authority under the regulations. It is not necessary or appropriate to take a case off the court's docket to allow the court to lose track of the case entirely. You know, when the regulations actually require the court to keep the case moving forward. So that is where the necessary and appropriate comes in, is with the exercise of the agency's authority. Mr. Wiggers, I'll ask you this question and Mr. Winograd would be free to speak to it as well. I guess I'm just wondering in this particular case, what is the consequence of leaving the case open rather than administratively closing it? In the government's view, why are you trying to block administrative closure? And maybe when Mr. Winograd comes back, he can talk about why it's important to his client to have administrative closure. In this case, it's an interesting question, Your Honor, because it would appear that based on the circumstances of the case as it progressed, whether a continuance would have been an equivalent option to administrative closure. Generally, they are. You achieve the same thing with the continuance and with administrative closure, which the ultimate goal for each one is to delay in the proceedings until something else. The reason the Attorney General is blocking the general exercise of administrative closure is because the way the adjudicators have been and so the Attorney General is trying to correct that problem. And as far as this specific case is concerned, it's the application of general rules. So, if there is no general authority to administratively close the case, the proper avenue would be through a continuance to obtain the delay. Now, with continuance, you have to have good cause shown, which is tied to the likelihood of relief being granted and whether it's going to materially affect the case. And we happen to know historically how this case has played out, that the I-360 petition was granted and that the visa petition eventually became current. Now, the agency didn't have that information at the time. Also, there was no final continuance request in front of the immigration judge. So, the last request of the immigration judge was administrative closure. And the only arguments presented to the board were on administrative closure. There was no good cause for it. I understand that. And so, that was what the agency was left to decide. Correct. And that's how it played out in this case. All right, that's fine. If that responds to your question, Your Honor. Sure, it does. Thanks. We have an official decision from the Attorney General whose instruction implicates his expertise in resolving ambiguities in the regulations. It reflects his considered judgment on the matter. There can't really be any unfair surprise on an authority that did not exist in the regulations apart from specific examples where it was specifically created. And to get to Mr. Winograd's point about there must have been a general authority in order for those settlement agreements to create administrative closure as an delegate more authority to the agencies. And he can do that through the regulations. When the settlement agreement calls for administrative closure, that's what the Attorney General did. He added the authority for administrative closure for that purpose. So, that doesn't necessarily mean that there was one that existed before. And in fact, if you had one that existed before, you wouldn't need the specific provision in the reg authorizing administrative closure because it would have already existed. But the Attorney General prior to the current one who entered into those settlement agreements could have done so with an eye towards creating the necessary delegations of authority to achieve the result of the settlement agreement. And that appears to be what actually transpired. If I may, I'd like to ask about your Vermont Yankee argument. And I just don't see how that agency had not promulgated a regulation or a rule with respect to the matter at issue. And I guess the Supreme Court felt that that was a sufficiently kind of interstitial executing the laws kind of thing that they weren't going to tell the agency what to do. But if the agency does promulgate a rule, it has to follow its rules. And I think you'd probably be the first one to say it has promulgated rules here. So why isn't Vermont Yankee just totally inapposite? Vermont Yankee goes more towards the authority of the Attorney General in controlling the administrative process. It's the Attorney General who gets to, who interprets the regulations for the board and the immigration judges to follow. And when the- There's a real high level of generality. I mean, the AG controls the admin process. So he can misinterpret regulations in the view of some folks, and that doesn't matter. If the Attorney General misinterprets a regulation, it can be subject to a challenge. But as far as the- But I thought you were saying Vermont Yankee precludes us from adjudicating this challenge. Vermont Yankee precludes the court from adopting its preferred procedural approach to this situation. I don't have any strong opinions about how to structure IJ powers. So I guess I'm just- How does it allow us to- I mean, how does it prevent us from reviewing the merits of the Attorney General's opinion in Castro Tune? You can review it, Your Honor, to determine whether the Attorney General's interpretation of the regulations is consistent with what the regulations say. But in our reading of Vermont Yankee, that's what your review would be cabined to. Well, that's what I think the petitioners are asking us to do. So it doesn't seem like there's really a problem with Vermont Yankee. Yes, Your Honor. And we maintain that the Castro Tune is consistent with the regulations. Does the regulations require the cases to move forward in Castro Tune advance that purpose by removing an obstacle to cases reaching conclusion? Why would the regs be talking about admin closure, you know, shall administratively close? Why would they do that if there was not some pre-existing authority to administratively close? Because if the regs don't talk about administrative closure in that circumstance, Your Honor, it's not available. The board and the immigration judge only have the powers that are delegated to them. And if the regulations don't delegate the power to administratively close in those circumstances, then the board and the immigration judges do not have that power to administratively close. So unless it appears in the regulations, it doesn't exist for purposes of the board and the immigration judge. And it's back to the bigger picture with the regulations. Administrative closure as a general matter does not exist in the regulations. And therefore, it does not exist for the board and the immigration judge. What do you think? I mean, so I guess the flip side of Judge Clay's question, you know, in your view, what mistake did the Seventh Circuit make? I mean, they said that administrative closure is a disposition. And, you know, I mean, I don't really see how that's true. But other than that, which is a significant thing, but I mean, where do you think they went wrong? I think where they went wrong, Your Honor, was similar to where the Fourth Circuit went wrong with their approach to the limited nature of the board and the immigration judge's authority under the immigration construct. Congress took all authority over immigration adjudications, gave it to the Attorney General with the authority to then delegate that down to the board and the immigration judges. And basically, it comes down to my earlier point about how if the regulations don't authorize it, or the statute doesn't authorize it, then the board and the immigration judges don't have it. Now, as far as administrative closure is concerned, the Fourth and the Seventh have also been over-reading or misreading necessary and appropriate. Necessary and appropriate is tied to the adjudicators discharging of their duties and powers under the regulations, not the end result of the case. So it has to be necessary and the disposition of the case. Yes, Your Honor. In some broader sense. Yes, Your Honor. That's what that's tailored to because, again, as 1003.12 points out, the rules governing these procedures all come back to trying to make sure that there's an expeditious fair and proper resolution. But expeditious is as important as the others. To the extent you create a process where you can't to a final resolution, you're defeating the purpose of the system. Can you think of any reason why the standard for granting a continuance, namely good cause, why that would, you know, why the regs would have a kind of a spell out a tougher standard there than they would for administratively closing the case altogether? I mean, the Seventh Circuit said, well, the reason why there's a continuance provision is because it includes a standard. Basically, that's they had to have that general authority for continuances, unlike not having one here, because they wanted to just spell out the standard. Right. And so but why would they? I mean, so if if there's an implied authority for administrative closure under this reg, there would seem to be an implied lesser authority for continuance. But but yet there's a general provision that says you've got authority for authority for a continuance. And the argument in the Seventh Circuit case was, well, you know, why would you spell that out if all this is already implied? And the Seventh Circuit said, well, we're it was probably there to put the standard there. And my question would be, well, why in the world would you have a tougher standard for continuances, namely good cause than you do for this implied administrative closure, which is a sort of this more loose, necessary and appropriate thing? I mean, are you aware of any reason to be more restrictive of content continuances than administrative closure? If I may respond, Your Honor. No, I'm not. And I believe it probably stems from the fact that there really are not implied authorities under the regulations. The regulations either grant the authorities or they do not. And if the regulations did not include a provision authorizing immigration judges to continue the case, they wouldn't have the authority. So it's in there both to create the authority and to set the standard. Now, when the board created administrative closure, it did so not as without imposing any kind of a standard on it. It was mainly grew out of an initial response by some educators to the. Actually, I mean, they never invoked this power, right? As far as I know, yes. All right. Well, we can see what Mr. Winograd thinks about the different standards. But anyway, I'm not presiding. So thank you. Yes. Mr. Winograd, any in the rebuttal? Yes. Thank you, Your Honor. I would respectfully disagree, Judge Ketledge, with your character characterization of the good cost standard for continuances as being tougher than the standard for administrative closure. I don't think that's true as a legal matter, and it's certainly not true as a practical matter. It is much more difficult to have an immigration judge or board administratively close a case than it is to have an immigration judge simply continue a case. I don't believe there are numbers on this, but I would wager to guess that if upwards of 500,000 cases have been administratively closed over the past three decades, then there have been millions, if not tens of millions, of continuances granted over the past few decades. So I think that the What is the standard, in your view, for administrative closure? Well, there are six factors that the board laid out in matter of abetezion, and that is the test. They don't specifically say the term good cause, but there is a multi-factor test that they have. And I would also disagree with your statement that matter of abetezion did not rely on any act on the regulations on which we rely in finding that there's authority. I was a question. Okay, so yeah, I'd be interested in your view. I think matter of abetezion certainly relies on those regulations. They use the term appropriate and necessary or necessary and appropriate throughout the opinion as well as they also refer to judges independent judgment and discretion, which is part of the same sentence. You also posed a question about what are the consequences of leaving the case open, rather than. Yeah, why is it important, in your view, that your client get administrative closure? Well, just as a clarification for the record, my client no longer needs administrative closure, because his priority date has since become current. So he is now eligible to apply for adjustment of status. And that's our alternative argument. Board misconstruing the basis for the remand. But I really think this actually goes to show you why preventing IJs from administratively closing cases is so counterproductive in the first place. Had the immigration judge granted my client's request for for administrative closure, then there would have been no need for her to hear his asylum application. There wouldn't have been an appeal to the board. And so, you know, years would have gone by and we would have gotten to the same place where my client's priority date would have become current. And frankly, my client would likely be a permanent resident by now had the IJ initially granted his request for administrative closure. So there's just it just, you know, taking this power away wholesale will just result in a very unwise use of resources across the board. Why is that true in your client's case that your client might already be a lawful permanent resident if the case had been closed? Because I mean, he had to wait for his eligibility date, right? Right. And now he is eligible. He became eligible in May of this year. So a few months after he applied, he was filed. He can't. Sorry. He cannot apply because he's under a final order of removal. OK, I understand. He can apply if this court remains the case for any reason, either based on vacating matter of custom or under alternative argument. My client was fully eligible for adjustment of status, and there would really be no reason why the board would not send the case back to the immigration judge to adjudicate the application that he reg or provision of the Immigration Act prevents him from applying for this lawful permanent resident visa when he is also subject to a order of removal? Because, I mean, it's like these programs contemplate that the person might be inadmissible otherwise, you know, but that we're going to make an exception because, you know, unaccompanied child or what have you. So remove inadmissibility and subject to being removed would seem to be pretty common, I would think, in these programs. And like so why why can't he apply? I would be happy to provide the exact citation in a 28 J letter, but I can just assure you as an officer of the court that judges or do not have jurisdiction to decide applications of aliens who are subject to a file a motion to the board to even have the opportunity to apply for adjustment. Okay, is it CIA or what? You know, we've seen CIS do stuff and IJs do stuff. Is it still CIS? Or is that still the right acronym? USC? Yes, yes, your honor. USC is the agency that has jurisdiction over adjustment of status for aliens who are not in removal proceedings. Okay, to one small exception, which is not applicable here. But otherwise, any alien who is in or has been in removal proceedings and subject to a final order can only seek adjustment of status before the immigration court system itself. Okay, thank you, sir. I appreciate my clients only route to adjustment of status. All right, very good. All right, well, that completes the argument. So the case may be adjourned.